**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

FILED
NOV 05 2021
AT_____ O'CLOCK
John M. Domurad, Clerk - Albany

| | |
|---|---|
| Julie A. Utter | ) |
|        Plaintiff(s) | ) Civil Case No.: 6:21-cv-1207 (LEK/TWD) |
| vs. | ) COMPLAINT PURSUANT |
| Cherry Valley-Springfield Central School District | ) TO THE AMERICANS |
| | ) WITH DISABILITIES ACT |
|        Defendant(s) | ) |

Plaintiff(s) demand(s) a trial by: ☐ JURY  ☑ COURT  (Select **only** one).

Plaintiff(s) in the above-captioned action, allege(s) as follows:

## JURISDICTION

1. This is a civil action seeking judgment, relief and/or damages brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended, for discrimination based upon a disability and the failure to accommodate same. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343(4).

## PARTIES

2. a. Plaintiff: Julie A. Utter

   Address: 103 State Hwy 165

   Roseboom, NY 13450

   b. Plaintiff: _____

   Address: _____

Additional Plaintiffs may be added on a separate sheet of paper.

3.  a.  Defendant: Cherry Valley Springfield CSD

    Official Position: NYS Public School

    Address: 597 County Road 54

    Cherry Valley, NY 13320

    b.  Defendant: _____

    Official Position: _____

    Address: _____

Additional Defendants may be added on a separate sheet of paper.

4.  My disability is as follows:
    I have a documented learning disability consisting of a processing delay and a diagnosis of (ADHD) Attention Deficit Hyperactivity Disorder, recognized under Other Health Impariments (OHI). Please see attached Psychological Report.

5. The conduct complained of in this action involves:
(Check all that apply)

    (A) ☐ Failure to employ.

    (B) ☑ Termination of employment.

    (C) ☐ Denial of participation in public service or program.

    (D) ☐ Failure to make alterations to accommodate disability.

    (E) ☑ Retaliation.

    (G) ☐ Other acts as specified below:

6. **FACTS**

On the following page, set forth the facts of your case which substantiate your claim of discrimination. List the events in the order they happened, naming defendants involved, dates and places.

    **Note:** Each fact should be stated in a separate paragraph; paragraphs should be numbered sequentially.

    You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint.

    You may use additional sheets as necessary.

Please See Attached EEOC Charge and Paperwork.

7.   **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff(s) request(s) that this Court grant the following relief: Please see attached Prayer For Relief.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: 11/5/21

_____
Signature of Plaintiff(s)
(all Plaintiffs must sign)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

300 Pearl St., Suite 450
Buffalo, NY 14202
(716) 431-5007
TTY (716) 551-5923
FAX Bufffaxmain@eeoc.gov

Julie Utter
103 State Highway 165
Roseboon, NY 13450

Re: EEOC Charge No.: 525-2021-00672
Julie Utter v. Cherry Valley-Springfield Central School District

Dear Ms. Utter:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information provided. You alleged that you were discriminated against because of your disability, and that you were subjected to retaliation.

Respondent's position statement has been previously shared with you. You were informed of reasons why the EEOC was inclined to dismiss your case. Your rebuttal was received and analyzed. Based upon this analysis the Commission is unable to conclude that the information establishes a violation of Federal Law on the part of Respondent. This does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice. Otherwise, your right to sue will be lost. Please contact Federal Investigator Nelly Sanchez at (716) 431-5017 if you have any questions.

Sincerely,

Date: _____

**Maureen C. Kielt**
Digitally signed by Maureen C. Kielt
Date: 2021.08.10 14:37:40 -04'00'
for
Maureen Kielt, Director
Buffalo Local Office

CC: David A. Fallon
1525 Western Ave.
Albany, NY 12203

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

NYS Division of Human Rights _____ and EEOC
*State or local Agency, if any*

**Name** *(indicate Mr., Ms., Mrs.)*: Ms. Julie Utter
**Home Phone** *(Incl. Area Code)*: (607) 264-3488
**Date of Birth**:

**Street Address**: 103 State Highway 165
**City, State and ZIP Code**: Roseboon, NY 13450

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

**Name**: Cherry Valley-Springfield Central School District
**No. Employees, Members**: 100+
**Phone No.** *(Include Area Code)*: (607) 264-3265

**Street Address**: P.O. Box 485
**City, State and ZIP Code**: Cherry Valley, NY 13320

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*:
☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: 11/23/2020
Latest: 2/4/2021
☐ CONTINUING ACTION

**THE PARTICULARS ARE** *(If additional paper is needed, attach extra sheet(s))*:
Please see attached continuation sheets.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

MANDY A. BURLISON
Notary Public - State of New York
No. 01BU6412037
Qualified in Otsego County
Commission Expires December 14, 202_

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the above is true and correct.

2/12/21      *Julie Utter*
Date           Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

February 12, 2021

## CONTINUATION SHEET TO HOFFMAN EEOC CHARGE

1. This Charge concerns claims of disability discrimination under the Americans with Disabilities Act of 1990 (ADA) as amended, 42 U.S.C. § 12101 *et seq.*, and the New York State Human Rights Law (NYSHRL), brought by Julie Utter (hereinafter "Ms. Utter") against Cherry Valley-Springfield Central School District (hereinafter "Cherry Valley"), concerning Ms. Utter's termination as a Special Education Teacher.

2. Ms. Utter was hired by Cherry Valley as a Special Education Teacher on September 18, 2017.

3. Ms. Utter is diagnosed with a learning disability.

4. Ms. Utter's son is also diagnosed with a learning disability and, upon Ms. Utter's hiring, she was informed that as a teacher working the district, her children were permitted to attend school within the district.

5. Following her hire, Ms. Utter received praise and high marks in her position.

6. For the 2017 – 2018 teaching period, Ms. Utter received an Annual Professional Performance Review (APPR) overall rating of "Highly Effective," the highest possible overall rating.

7. For the 2018 – 2019 teaching period, Ms. Utter again received an APPR rating of "Highly Effective," the highest possible overall rating.

8. In October 2019, Ms. Utter advised her direct supervisor, Bonnie Georgi, Director of Special Education / DDC, that Ms. Utter would enrolling her special needs child in the district. Numerous teachers in the past had enrolled their non-disabled children in the district, including in situations wherein such teachers taught their own children.

9. Ms. Georgi verbally expressed her disapproval of Ms. Utter enrolling her disabled child in the district and shot an annoyed look at Ms. Utter.

10. Ms. Georgi stated that Ms. Utter's general education daughter could attend the district, but her special needs son could not. Ms. Georgi implied that taking on another special needs student would pose a hardship for the district. In spite of Ms. Georgi's objections, Ms. Utter still intended to enroll her special needs child in the district.

11. Ultimately, Ms. Utter's special needs child was permitted to enroll in the district. However, Ms. Utter's treatment before and after October 2019 was night and day, and she became targeted for termination by the district.

12. In the year following her October 2019 discussion with Ms. Georgi, Ms. Utter was consistently targeted with baseless performance accusations, and subjected to a grossly increased workload, all in an effort to build a paper trail to terminate her employment prior to the end of her probationary period.

13. These accusations against Ms. Utter had no basis in fact. To the contrary, Ms. Utter had maintained her exemplary level of performance as a Special Education Teacher.

14. On October 23, 2020, Ms. Utter transmitted an email to Ms. Georgi, Ms. Climenhaga, and others, in which Ms. Utter discussed her learning disability and further stated an intention to seek assistance from a disability advocate. As set forth more fully below, Cherry Valley then brazenly and openly used this email exchange as a basis to terminate Ms. Utter's employment.

15. On or about December 4, 2020, Ms. Utter was provided correspondence from Superintendent of Schools TheriJo Climenhaga. This correspondence stated that Ms. Utter would be recommended for termination by the district.

16.     On or about December 14, 2020, Ms. Utter was provided with a statement of the alleged reasons why her employment was being terminated ("Statement of Reasons"). There were six (6) allegations against Ms. Utter, none of which supported her removal.

17.     The accusations in the Statement of Reasons were either false or grossly exaggerated. The fact was that Ms. Utter had maintained the very same strong performance, which had been consistently recognized prior to October 2019, the date she advised Ms. Georgi that she would be enrolling her son in the district.

18.     As an example of the fabricated accusations against Ms. Utter, the Statement of Reasons accused Ms. Utter of submitting report cards late. However, Ms. Utter was not responsible for providing report cards for her special education students. Rather she was responsible for providing "progress notes," which she completed and submitted on time. The Statement of Reasons then states that progress notes for "previous school years have been submitted after the deadline." However, Ms. Utter received "highly effective" overall ratings on her APPRs in these previous school years, and prior to 2019 had not been counseled or disciplined with respect any potentially late progress notes.

19.     The Statement of Reasons also falsely accused Ms. Utter of modifying her schedule "without collaboration or permission from your direct supervisor." This allegation was completely false, as Ms. Utter had self-designed her schedule at Ms. Georgi's request.

20.     The Statement of Reasons further falsely accused Ms. Utter of a lack of preparation that negatively impacted "the quality of instruction we offer our children." This was of course again directly contradicted by Ms. Utter's performance reviews. For example, for both the 2017 – 2018 and 2018 – 2019 school years, Ms. Utter received "student performance ratings" of "highly effective" – the highest possible rating.

21. The Statement of Reasons also falsely accused Ms. Utter of an "inability to effectively collaborate with colleagues." The statement of reasons was *the first* instance in which Ms. Utter was ever made aware that there was a concern with her ability to collaborate with colleagues. Ms. Utter believes this statement to be completely false as Ms. Utter always treated her colleagues with kindness and respect.

22. The Statement of Reasons further accuses Ms. Utter of sending an inappropriate email in which she allegedly, *inter alia*, "made accusatory and untrue statements toward your employer as an EOE." This constitutes direct evidence of retaliation and was in direct response to an email discussion in which Ms. Utter discussed her disability and further stated, "I just made myself completely vulnerable by informing my employer of my disability. That wasn't the response I expected from an EOE. Meeting with you and Jim and union representation will also be accompanied by a disability advocate as well. That is my right as someone with a disability." To use this as a basis to terminate Ms. Utter constitutes direct evidence of discrimination and reprisal.

23. During the 2020 – 2021 school year, the district also placed a substantially increased workload upon Ms. Utter. Ms. Utter was a special education teacher, whose sole responsibility was to be teaching special needs students. However, during the 2020 – 2021 school year, Ms. Utter was also given the responsibility of teaching five (5) additional general education students that were remote and in need of teaching. These students were in first, second, third (2 students), and fourth grades. Ms. Utter never received any explanation as to why these students' general educations teachers were not responsible for their instruction. Nonetheless, she did not complain and attempted to be a team player. However, the drastically increased workload and barrage of baseless accusations took its toll upon Ms. Utter.

24. On or about January 13, 2021, Ms. Utter provided a response addressing each of the allegations set forth in the Statement of Reasons.

25. On or about February 4, 2021, Ms. Utter received correspondence from Ms. Climenhaga that her employment would be terminated effective February 20, 2021.

26. Upon information and belief, Ms. Utter has been replaced by a non-disabled individual who does not have any experience teaching special education.

## AS AND FOR A FIRST CAUSE OF ACTION
## DISABILITY-BASED DISCRIMINATION (ADA and NYSHRL)

27. Ms. Utter is within a protected class on account of her disability.

28. Ms. Utter is in a protected class on account of her association with her disabled minor child.

29. Ms. Utter's learning disability is a disability within the intendment of the ADA, 42 U.S.C. § 12102, and substantially limits multiple major life activities.

30. Ms. Utter's learning disability is a disability within the intendment of the NYSHRL, N.Y. Exec. L. § 292(21).

31. Ms. Utter's minor child has a disability within the intendment of 42 U.S.C. § 12102 and N.Y. Exec. L. § 292(21) and Ms. Utter is in a protected class based upon her association with said minor child.

32. Ms. Utter's disability as well as the disability of her child was known to Respondent and Respondent's decision-makers in regard to her termination and other discriminatory acts complained of.

33. Because of her disability, Ms. Utter was threatened with and subjected to tangible adverse employment actions, including her February 4, 2021 termination and November 23, 2020 evaluation.

34. Ms. Utter did not engage in any misconduct to support the termination of her employment with Cherry Valley. However, even if Ms. Utter did engage in any such infractions, any such infractions were not comparable in seriousness to misconduct of similarly situated employees outside of the protected classes to which Ms. Utter belonged who were not subjected to similar adverse employment actions.

35. Ms. Utter suffered more severe discipline, including termination, as a result of her alleged misconduct and/or performance, than similarly situated employees who were outside her protected class who engaged in misconduct of comparable or greater seriousness.

36. As a direct and proximate result of Cherry Valley's illegal discrimination against Ms. Utter and discriminatory discharge of her, Ms. Utter has incurred damages including but not limited to lost income and benefits, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Cherry Valley's illegal discrimination and discriminatory discharge.

### AS AND FOR A SECOND CAUSE OF ACTION
### RETALIATION (ADA and NYSHRL)

37. Ms. Utter is within a protected class on account of her protected activity, to include but not limited to her October 23, 2020 email concerning her disability and request for a disability rights advocate.

38. Ms. Utter's protected activity was known to Respondent and Respondent's decision-makers in regard to her termination and other discriminatory acts complained of.

39. Because of her protected activity, Ms. Utter was threatened with and subjected to tangible adverse employment actions by Cherry Valley, including but not necessarily limited to her February 4, 2021 termination and November 23, 2020 evaluation.

40. Ms. Utter did not engage in any misconduct to support the termination of her employment with Cherry Valley. However, even if Ms. Utter did engage in any such infractions, any such infractions were not comparable in seriousness to misconduct of similarly situated employees outside of the protected classes to which she belonged who were not subjected to similar adverse employment actions.

41. Ms. Utter suffered more severe discipline, including termination, as a result of her alleged misconduct and/or performance, than similarly situated employees who were outside her protected class who engaged in misconduct of comparable or greater seriousness.

42. As a direct and proximate result of Cherry Valley's illegal retaliation against Ms. Utter and discriminatory discharge of her, Ms. Utter has incurred damages including but not limited to lost income and benefits, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Cherry Valley's illegal discrimination and discriminatory discharge.

## PRAYER FOR RELIEF

Ms. Utter respectfully requests the following relief against Respondents:

a. Pay Ms. Utter an appropriate award of front and back pay, including all lost income and benefits of employment, both past and future.

b. Pay Ms. Utter for her past and future non-pecuniary losses resulting from the illegal conduct and practices complained of herein, including but not limited to damages flowing from her humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, and other compensatory damages.

c. Award Ms. Utter attorney's fees, costs, and disbursements as provided by law; and

    d.    Award such other and further relief as may be appropriate under the law and the facts of this case.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Julie Utter declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 2/12/21
Date

_Julie Utter_
Julie Utter

MANDY A. BURLISON
Notary Public - State of New York
No. 01BU6412037
Qualified in Otsego County
Commission Expires December 14, 2024

EEOC Form 161 (11/2020)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Julie Utter<br>103 State Highway 165<br>Roseboom, NY 13450 | From: | Buffalo Local Office<br>300 Pearl Street<br>Suite 450<br>Buffalo, NY 14202 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2021-00672 | Nelida Sanchez, Investigator | (716) 431-5017 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Maureen C. Kielt**    Digitally signed by Maureen C. Kielt
Date: 2021.08.10 14:38:17 -04'00'

Enclosures(s)     **Maureen Kielt, Local Office Director**     *(Date Issued)*